**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

BERLUTI SA and
LOUIS VUITTON MALLETIER,

                Plaintiffs,

vs.

BERLUTISHOEOUTLET.COM, BERLUTICOPY.COM,
BERLUTISHOESALE.COM, BERLUTISHOESHOP.COM,
BERLUTISHOESSHOP.COM, BERLUTISHOESTORE.COM, BAGLV.RU,
BOLSOS-LOUISVUITTONS.COM, LOUIS-TASCHENS.CLUB,
LOUISVUITTON.TOP a/k/a LOUISVUITTON2020.TOP a/k/a
LOUISVUITTONSHOP.CLUB a/k/a LOUISVUITTONSHOP.ONLINE a/k/a
LOUIS-VUITTON-SHOP.TOP a/k/a LOUISVUITTONSHOPSW.TOP a/k/a
LOUISVUITTONSTORE.XYZ a/k/a LOUIS-VUITTONSTORE.XYZ a/k/a
LUXURYSHOPIN.COM, LOUISVUITTON-BARATOS.EU,
LOUISVUITTONHUNTER.NET, LVBAG.RU,
LVBAG2019ONLINE.COM, LVBAGS.STORE, LVBAGSALE.CLUB,
LVBAG-SALE.COM, LVBAGSBE.COM, LVBAGTW.NET, LV-SHOP.RU,
LV-SINGAPORES.COM, REPLICALVSHOP.COM,
REPLICASLVSTORE.COM, TOPLVBAG.COM,
AUTHENTICLOUISVUITTONHANDBAGS.COM a/k/a
AUTHENTICLOUISVUITTONHANDBAGSOUTLET.COM a/k/a
REALPURSES.RU, GIFTS4WIFE.COM a/k/a AMUZE.TOP a/k/a
BAGBUY.TOP a/k/a BAGF.XYZ a/k/a BAGGN.TOP a/k/a BAGLR.TOP
a/k/a BAGQ.XYZ a/k/a BAGR.XYZ a/k/a BAGT.XYZ a/k/a BAGW.XYZ
a/k/a BAGXJ.TOP a/k/a BOURKE.TOP a/k/a CHOIES.TOP a/k/a
COSTCO.TOP a/k/a DERMSTORE.TOP a/k/a DOONEY.TOP a/k/a
DRJAYS.XYZ a/k/a ECOST.XYZ a/k/a FRESHPAIR.XYZ a/k/a
GIFT4WIFE.COM a/k/a GOLDYN.TOP a/k/a GOLDYN.XYZ a/k/a
HANDANGO.XYZ a/k/a JOYGRYSON.TOP a/k/a JOYGRYSON.XYZ
a/k/a KARMALOOP.TOP a/k/a KAYU.XYZ a/k/a LOIT.XYZ a/k/a
LOUISVUITTONBLACKFRIDAY.TOP a/k/a
LOUISVUITTONBLACKFRIDAY2019.XYZ a/k/a
LOUISVUITTONBLACKFRIDAYDISCOUNT.XYZ a/k/a
LOUISVUITTONBLACKFRIDAYSALE.XYZ a/k/a
LOUISVUITTONBLACKFRIDAYSHOP.XYZ a/k/a
LOUISVUITTONBLACKFRIDAYSTORE.TOP a/k/a LV2020.TOP a/k/a
LVBAG.SITE a/k/a LVBAGS.XYZ a/k/a LVBLACKFRIDAY.TOP a/k/a
LVBLACKFRIDAY2019.CLUB a/k/a LVBLACKFRIDAYSHOP.TOP a/k/a
LVBLACKFRIDAYSTORE.XYZ a/k/a LVCLUB.XYZ a/k/a
LVCOUPON.XYZ a/k/a LVESHOP.TOP a/k/a LVFACTORY.TOP a/k/a
LVGIFTS.XYZ a/k/a LVHANDBAGS.XYZ a/k/a LVHOME.PUB a/k/a
LVHOT.TOP a/k/a LVHOUSE.PUB a/k/a LVMALL.XYZ a/k/a

LVMARKET.SITE a/k/a LVOFF.TOP a/k/a LVONLINE.XYZ a/k/a
LVOUTLET.SITE a/k/a LVSHOP.SITE a/k/a LVSHOP.XYZ a/k/a
LVSTORE.PUB a/k/a MODNIQUE.XYZ a/k/a NEXTAG.TOP a/k/a
SHOP0.SITE a/k/a SHOP0.XYZ a/k/a SHOP1.PUB a/k/a SHOP3.PUB a/k/a
SHOP4.CLUB a/k/a SHOP4.REN a/k/a SHOP5.CLOUD a/k/a SHOP6.SITE
a/k/a SHOP7.ONLINE a/k/a SHOP7.PUB a/k/a SHOP8.PUB a/k/a
SHOP8.SITE a/k/a SHOP8.XYZ a/k/a SHOP9.REN a/k/a SHOPB.PUB a/k/a
SHOPC.CLUB a/k/a SHOPC.XYZ a/k/a SHOPD.TOP a/k/a SHOPF.XYZ
a/k/a SHOPG.SITE a/k/a SHOPG.TOP a/k/a SHOPH.SITE a/k/a
SHOPH.TOP a/k/a SHOPI.CLUB a/k/a SHOPI.SITE a/k/a SHOPK.PUB a/k/a
SHOPK.TOP a/k/a SHOPM.CLUB a/k/a SHOPM.XYZ a/k/a SHOPN.PUB
a/k/a SHOPN.SITE a/k/a SHOPN.TOP a/k/a SHOPO.REN a/k/a
SHOPR.CLUB a/k/a SHOPT.CLUB a/k/a SHOPT.PUB a/k/a SHOPU.REN
a/k/a SHOPU.XYZ a/k/a SHOPV.PUB a/k/a SHOPV.SITE a/k/a
SHOPV.TOP a/k/a SHOPW.TOP a/k/a SHOPZ.TOP a/k/a STILA.TOP a/k/a
STILA.XYZ a/k/a STJOHN.XYZ a/k/a STORE0.TOP a/k/a STORE0.XYZ
a/k/a STORE3.ONLINE a/k/a STORE3.XYZ a/k/a STORE4.CLUB a/k/a
STORE4.TOP a/k/a STORE4.XYZ a/k/a STORE5.CLUB a/k/a
STORE5.XYZ a/k/a STORE7.CLUB a/k/a STORE7.TOP a/k/a
STORE7.XYZ a/k/a STORE9.CLUB a/k/a STORE9.TOP a/k/a
STORE9.XYZ a/k/a STOREA.XYZ a/k/a STOREB.SITE a/k/a
STOREB.XYZ a/k/a STOREE.CLUB a/k/a STOREE.PUB a/k/a
STOREF.XYZ a/k/a STOREG.XYZ a/k/a STOREH.XYZ a/k/a
STOREI.CLUB a/k/a STOREI.SITE a/k/a STOREJ.TOP a/k/a STOREJ.XYZ
a/k/a STOREL.SITE a/k/a STOREL.XYZ a/k/a STOREM.ONLINE a/k/a
STOREN.CLUB a/k/a STOREP.XYZ a/k/a STOREQ.XYZ a/k/a
STORER.CLOUD a/k/a STORES.PUB a/k/a STOREU.CLUB a/k/a
STOREV.CLUB a/k/a STOREV.ONLINE a/k/a STOREX.PUB a/k/a
STOREY.CLUB a/k/a STOREY.PUB a/k/a THEROW.XYZ a/k/a
VIPBAG.TOP, 3AIMITATIONBAGS.COM, 3SREPLICABAGS.COM a/k/a
AAABAGSFASHION.COM, AAABAG.NU a/k/a AAAHANDBAGS.NU
a/k/a LEADERREPLICA.COM a/k/a NEWSLUXURYBAGS.COM,
AAAHANDBAG.SE a/k/a AAAREPLICABAGS.NU, ABAGS.SU,
ABCWATCHES.CN a/k/a WOWATCHES.CN, BAG32.COM,
BAGSCOPYSTORE.COM, BELLISSIMO-LUXURY.COM,
BETTYPURSES.COM, BRAND-BELTS.RU, BRANDSANDSTYLE.RU,
BRANDSHOPPING.COM.UA, BRENDMSK.RU, BREND-SHOES.RU,
BROKENSWINGBAND.COM, BUDGETSIGNSMN.COM,
CHEAP4WORLD.RU, CHEAPBAGS.RU, CNREPLICA.BEST a/k/a
HOTSAN.BEST a/k/a HOTSAN.SITE a/k/a REPLICABAGS.BEST a/k/a
REPLICABAGS.SHOP, CHEAPBRANDBAGSHOES.COM,
CHINAHANDBAGS.RU, CLASSICBILLIARDSPOOL.COM,
CLONWATCHES.COM, DOPESTKICKZ.RU, DW-WATCHS.RU a/k/a
HOUSESWATCHS.RU a/k/a HOUSEWATCHESS.RU a/k/a
HOUSWATCHESS.RU a/k/a WATCHES-24-7.RU, ELUXURY.CO,
ESSENCELUXURY.RU, EUROFASHIONS.RU,

FAKEPURSESSHOPPING.COM, FASHION-MANIA.RU, FASHION-OPTIC.COM.UA, FRONSA.COM, FULLSNEAKER.COM, HELPSTAFFS.COM, HONTWATCHES.TO, IMIDGE.COM.UA, JULIABAGS.RU, KOLAMKOI.COM, KROSSOVKI-FASHION.RU, LACOSA-FASHION.RU, LIEBLINGSTASCHENSHOP.COM, LOFTYLITTLES.COM, LUX4SHOP.COM, LUXTIME.SU, LUXURY-BAGS-SALE.RU, LUXURYBRANDSHOP.RU a/k/a MYLUXURYBAGS.RU, LUXURYREPLICASOUTLET.COM, LUXURYREPLICASSALE.COM, LUXURYTASTICREPLICA.CO a/k/a LUXURYTASTICREPLICAS.CO, MAKWATCH.COM.UA, MARAGIFT.COM, MEGAREPLICAS.COM.BR, MENSLUXURY.SU, MK-FASHION.RU, MODAMALL.CN a/k/a MODECHINE.RU, MODECLOTHES.RU a/k/a PURSEMALL.CN a/k/a PURSEMALL.RU, MODNIE-SUMKI.COM, PLOMBIER-MONTESSON.COM, PURSESREPLICASHOP.COM, PURSEWORTHY.EE, RAYMENEZES.COM, REPLICABAGSHOP.RU, REPLICABAGSLATEST.COM, REPLICABAGSSELLING.COM, REPLICANEWBAGS.COM, REPLICASDERELOGIOS.COM.BR, REPLICASHOPINDIA.IN, REPLICASSHOPPING.RU, REPLICAWATCHES.WS, REPLICAWATCHREPORT.CO, REPTRIPLEAWATCH.CO, ROYALWATCHES.PK, SALEAAA.COM, SHOESHOTSHOPS.COM, SHOES-VIP.RU, SHOPINC.RU, SHOPPING-HANDBAGS.COM, SHOPREPLIKA.COM.UA, SNEAKERS-FASHION.RU, STYLEPER.KR, SUNGLASSES-ONLINE.RU, SWISSCOPIES.RU, TASCHENOUTLETWIEN.AT, THEMINIUNICORN.CO.ZA, THEPOTENTIALISTS.CA, TITONISTAS.COM, TUSANI-BIG-BEN.COM, VANTAGEPOINTSTABLE.COM, VILLAGE-OUTLET.RU, VIPSWATCH.RU, WATCHMANIA.RU, WATCHMARKAZ.PK, WHITESTORY.UA, WORLDSCAPESLGPLLC.COM, Z077.RU, ZAHIDGILL.COM, ZEALREPLICA.PL, and ZEDO-FASHION.COM, each an Individual, Partnership, or Unincorporated Association,

                    Defendants.

_____/

## <u>COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES</u>

Plaintiffs, Berluti SA ("Berluti") and Louis Vuitton Malletier ("Louis Vuitton")

(collectively, "Plaintiffs")[1] hereby sue Defendants, the Individuals, Partnerships, or

Unincorporated Associations identified in the caption, which are set forth on Schedule "A"

_____

[1] Plaintiffs are subsidiaries of LVMH Moet Hennessy Louis Vuitton, SE, the world's leading luxury goods company.

hereto (collectively "Defendants").  Defendants are promoting, selling, offering for sale and/or distributing goods under and/or bearing counterfeits and confusingly similar imitations of Plaintiffs' trademarks within this district through at least the commercial Internet websites operating under the domain names set forth on Schedule "A" hereto (the "Subject Domain Names").  In support of its claims, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.      This is an action for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement, pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a) and 1125(d), and The All Writs Act, 28 U.S.C §1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district because they operate commercial websites accessible in this district, conduct business by registering and maintaining commercial Subject Domain Names registered within the United States and/or direct business activities towards consumers throughout the United States, including within the State of Florida and this district through at least the commercial Internet websites operating under the Subject Domain Names. [2]

---

[2] Some Defendants use their Subject Domain Names to act as supporting domain names to direct traffic to their fully-interactive, commercial websites operating under other Subject Domain Names, from which consumers can complete purchases. Some of the supporting domain names, when accessed directly, appear to be blog style or non-operating websites; however, when visited from a search engine such as Google, visitors are redirected to the fully-interactive websites operating under other Subject Domain Names. Other supporting domain names either

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens engaged in infringing activities and causing harm within this district by advertising, offering to sell and/or selling infringing products into this district.

## THE PLAINTIFFS

4.      Berluti is a société anonyme organized under the laws of the Republic of France with its principal place of business located at 120 rue du Faubourg Saint-Honoré, F-75008 Paris, France. Berluti and its affiliated companies are, in part, engaged in the business of designing, manufacturing, marketing, and distributing throughout the world, including within this district, a variety of high quality luxury goods under multiple world famous common law and federally registered trademarks, including those identified in Paragraph 19.

5.      Louis Vuitton is a société par actions simplifiée organized under the laws of the Republic of France with its principal place of business located at 2, rue du Pont-Neuf in Paris, France 75034.  Louis Vuitton operates boutiques throughout the world, including within this district. Louis Vuitton is, in part, engaged in the business of manufacturing, marketing, and distributing throughout the world, including within this district, a variety of high quality luxury goods under multiple world famous common law and federally registered trademarks, including those identified in Paragraph 28.

---

automatically redirect and forward to a fully-interactive, commercial Internet website operating under one of the Subject Domain Names or redirect a consumer to a fully-interactive, commercial Internet website operating under one of the Subject Domain Names upon clicking a product or link on the website. Accordingly, the web pages for the Subject Domain Names which operate as redirecting websites are included with the web pages to which those sites redirect, as shown in Composite Exhibit "3" attached hereto.

Some Subject Domain Names do not offer prices for products and/or the shopping cart feature; rather, consumers are able to browse the listings of Plaintiffs' branded products online via the websites, ultimately allowing customers to inquire and make direct purchases of Plaintiffs' branded products via electronic communication, including e-mail and/or private messaging services such as WhatsApp and WeChat, or via phone.

6.      Plaintiffs offer for sale and sell their trademarked goods within the State of Florida, including this district, through their boutiques, prestigious department stores, and their online retail websites. Defendants, through the advertising, offering for sale, and sale of counterfeit and infringing versions of Plaintiffs' branded products, are directly, and unfairly, competing with Plaintiffs' economic interests in the State of Florida and causing Plaintiffs harm within this jurisdiction.

7.      Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of their trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs' trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their economic stores.

8.      In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, each year Plaintiffs expend significant resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement, such as field training guides and seminars. The exponential growth of counterfeiting over the Internet has created an environment that requires Plaintiffs to file a number of lawsuits, often it later turns out, against the same individuals and groups, in order to protect both consumers and itself from the ill effects of confusion and the erosion of the goodwill connected to Plaintiffs' brand.

## **THE DEFENDANTS**

9.      Defendants operate through domain names registered with registrars in multiple countries, including the United States, and are comprised of individuals, partnerships, and/or business entities of unknown makeup, whom, upon information and belief, likely reside and/or

6

operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants direct their business activities towards consumers throughout the world, including the United States and within this district through the simultaneous operation of at least the commercial Internet websites existing under the Subject Domain Names.

10.     Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by the same Defendant Number on Schedule "A" hereto.

11.     Defendants are directly and personally contributing to, inducing and engaging in the sale of counterfeit branded products as alleged herein, often times as partners, co-conspirators and/or suppliers.

12.     Defendants are part of an ongoing scheme to create and maintain an illegal marketplace enterprise on the World Wide Web, which (i) confuses consumers regarding the source of Defendants' goods for profit, and (ii) expands the marketplace for illegal, counterfeit versions of Plaintiffs' branded goods while shrinking the legitimate marketplace for Plaintiffs' genuine branded goods.  The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiffs' famous names and associated trademarks, as well as the destruction of the legitimate market sector in which Plaintiffs operate.

13.     Defendants are the past and present controlling forces behind the operation of the Internet websites operating under at least the Subject Domain Names.

14.     Defendants directly engage in unfair competition with Plaintiffs by (i) advertising, offering for sale and/or selling goods bearing counterfeits and infringements of one or more of Plaintiffs' trademarks to consumers within the United States and this district through at least the

commercial websites operating under the Subject Domain Names and corresponding website Uniform Resource Locator ("URL"), and any additional domains and websites, and corresponding website URLs not yet known to Plaintiffs and (ii) creating and maintaining an illegal marketplace enterprise for the purpose of diverting business from Plaintiffs' legitimate marketplace for their genuine goods.  Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, and/or sale of counterfeit versions of Plaintiffs' branded goods into the State and by operating an illegal marketplace enterprise which impacts and interferes with commerce throughout the United States, including within the State of Florida.

15.     Defendants have registered, established or purchased, and maintained their respective Subject Domain Names, and the websites operating thereunder. Upon information and belief, many Defendants have engaged in fraudulent conduct with respect to the registration of the Subject Domain Names by providing false and/or misleading information to their various registrars during the registration or maintenance process. Upon information and belief, Defendants have registered and/or maintained their Subject Domain Names for the sole purpose of engaging in illegal counterfeiting activities.

16.     Defendants will likely continue to register or acquire new domain names for the purpose of selling and/or offering for sale goods bearing counterfeit and confusingly similar imitations of one or more of Plaintiffs' trademarks unless preliminarily and permanently enjoined.  Moreover, Defendants will likely continue to maintain and grow their illegal marketplace enterprise at Plaintiffs' expense unless preliminarily and permanently enjoined.

17.     Defendants' entire Internet-based website businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of Plaintiffs and others.

18.     Defendants' business names, i.e., the Subject Domain Names, and any other domain names and aliases used in connection with the sale of counterfeits under Plaintiffs' trademarks, are essential components of Defendants' counterfeiting and infringement activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiffs.  Moreover, Defendants are using Plaintiffs' famous names and trademarks to drive Internet consumer traffic to their websites operating under the Subject Domain Names, thereby creating and increasing the value of the Subject Domain Names and decreasing the size and value of Plaintiffs' legitimate consumer marketplace at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

### Berluti's Trademark Rights

19.     Berluti is the owner of the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Berluti Marks").

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| BERLUTI | 1,871,385 | January 3, 1995 | IC 025. shoes [ and slippers ]. |
| BERLUTI | 3,502,025 | September 16, 2008 | IC 018. Goods made of leather and imitation leather, namely, handbags, purses, [ attache cases, ] briefcases, business card cases, credit card cases, [ calling card cases, telephone card cases, ] document cases, [ vanity cases sold empty, ] toiletry cases sold empty, overnight cases; small goods made of leather or imitation leather, namely, wallets, key cases; [ animal skins and hides; luggage trunks; ] suitcases [ ; umbrellas ] [ ; parasols; walking sticks ] |

| | | | |
|---|---|---|---|
| BERLUTI | 4,255,851 | December 11, 2012 | IC 003. [ Perfumes; toilet water; eau de Cologne; soaps for personal use; essential oils for cosmetic purposes; deodorants for personal use; cosmetics; cosmetic shower and bath preparations and gels; cosmetic creams and lotions for the body, face and hair; shampoos; shaving preparations; aftershave gels, balms and lotions; shoe wax; waxes for cobblers; ] boot creams; creams for leather; leather preserving polishes.<br>IC 009. Bags and valises for photographic and cinematographic apparatus; [ portable telephones; ] accessories, namely, covers, [ casings, hand straps and neck straps ] for devices, namely, mobile telephones, laptop computers, [ personal digital assistants, digital players, photographic, and cinematographic apparatus; blank USB flash drives; earphones; ] spectacles; sunglasses; spectacle cases.<br>IC 014. Jewelry; costume jewelry; jewelry, namely, [, earrings, rings, ] cufflinks, bracelets, [ trinkets in the nature of rings, brooches, chains, necklaces, tie pins, medallions; ] key rings of precious metal; [ horological and chronometric instruments, namely, watches, wrist watches, watch straps, clocks, small clocks, chronograph watches, chronometers, alarm clocks; boxes and cases for clocks; ] boxes and cases for watches.<br>IC 021. Brush-making materials; [ cleaning brushes for household use; ] chamois leathers for cleaning; non-electric wax-polishing appliances for shoes, namely, shoe polish applicators not containing shoe polish; shoe horns; [ boot jacks; ] shoe trees; brushes for footwear; shoe brushes; [ vaporizers for perfume sold empty; shaving brushes, shaving brush stands ].<br>IC 025. Clothing and underclothing, namely, shirts, tee-shirts, jumpers, vests, [ skirts, frocks, ] trousers, coats, jackets, belts for clothing, scarves, sashes for wear, gloves, neckties, socks, [ lingerie, ] bathing suits, [ pajamas; ] footwear; headwear. |
| BERLUTI | 4,970,845 | June 7, 2016 | IC 035. Retail store services and online retail store services featuring clothing, footwear, headwear, leather goods, optical goods, jewelry, watches and luggage; presentation of goods, namely, clothing, footwear, headwear, optical goods, leather goods, jewelry, watches and luggage, on all communication media for retail purposes. |

The Berluti Marks are used in conjunction with the manufacture and distribution of high quality goods in the categories identified above.  True and correct copies of the Certificates of Registration for the Berluti Marks are attached hereto as Composite Exhibit "1."

20.     Long before the Defendants began their infringing activities complained of herein, the Berluti Marks have been used by Berluti in interstate commerce to identify and distinguish Berluti's high quality goods for an extended period of time.

21.     The Berluti Marks have never been assigned or licensed to any of the Defendants in this matter.

22.     The Berluti Marks are symbols of Berluti's quality, reputation and goodwill. Berluti has continuously used the Berluti Marks since registration.

23.     Further, Berluti and its affiliated companies expend substantial resources developing, advertising and otherwise promoting the Berluti Marks.

24.     Berluti and its affiliated companies extensively use, advertise, and promote the Berluti Marks in the United States in association with the sale of high quality goods and has carefully monitored and policed the use of the Berluti Marks.

25.     As a result of Berluti efforts, members of the consuming public readily identify merchandise bearing or sold under the Berluti Marks as being high quality goods sponsored and approved by Berluti.

26.     Accordingly, the Berluti Marks have achieved secondary meaning as identifiers of high quality goods.

27.     Genuine goods bearing the Berluti Marks are widely legitimately advertised, promoted, and sold by Berluti and its affiliated companies and authorized distributors via the Internet.  Over the course of the past several years, visibility on the Internet, particularly via

Internet search engines such as Google, Yahoo! and Bing has become increasingly important to Berluti's overall marketing and consumer education efforts. Thus, Berluti and its affiliated companies expend significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.  Those strategies allow Berluti and its authorized retailers to fairly and legitimately educate consumers about the value associated with the Berluti brand and the goods sold thereunder.

**Louis Vuitton's Trademark Rights**

28.     Louis Vuitton is the owner of the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Louis Vuitton Marks").

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
|  | 0,297,594 | September 20, 1932 | IC 18: trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, hand bags, and pocketbooks. |
| LOUIS VUITTON | 1,045,932 | August 10, 1976 | IC 18: luggage and ladies' handbags. |
|  | 1,519,828 | January 10, 1989 | IC 18: trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, hand bags, pocketbooks. |
|  | 1,794,905 | September 28, 1993 | IC 16: stationery, pads of stationery, calendars, indexes for articles made for travellers, notebooks, envelopes; writing paper, office requisites in the nature of writing pads, pencil holders, pen cases, pencil cases, nibs, nibs of gold, inkwells, inkstands.<br>IC 25: clothing for men and women; namely belts, shawls, sashes, scarves; footwear headgear. |
|  | 1,938,808 | November 28, 1995 | IC 14: jewelry, watches and straps for wrist watches.<br>IC 24: travel blankets made of textile. |

| | | | |
|---|---|---|---|
| LOUIS VUITTON | 1,990,760 | August 6, 1996 | IC 14: watches and straps for wrist watches.<br>IC 16: catalogues featuring luggage and travel accessories, bags, small leather goods, and garments; notebooks, anthologies, and pamphlets referring to travel; calendars; telephone indexes; fountain pens, ballpoint pens, nibs, covers for pocket and desk diaries, and checkbook holders.<br>IC 18: trunks; traveling trunks; suitcases; traveling bags; luggage; garment bags for travel; hat boxes for travel; shoe bags for travel; umbrellas; animal carriers; rucksacks; haversacks; leather or textile shopping bags; beach bags; handbags; vanity cases sold empty; attaché cases; tote bags, travel satchels; clutch bags; briefcases; wallets; pocket wallets; credit card cases; business card cases; bill and card holders; checkbook holders; key cases; change purses; briefcase-type portfolios.<br>IC 24: travel blankets<br>IC 25: shirts; sweatshirts; polo shirts; T-shirts; headwear; jackets; ties; belts; shawls; scarves. |
|  | 2,177,828 | August 4, 1998 | IC 14: goods made of precious metals, namely, shoe ornaments, ornamental pins; jewelry, namely, rings, ear rings, cufflinks, bracelets, charms, necklaces; horological instruments, straps for watches, watches and wrist-watches, and cases for watches.<br>IC 18: goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather; trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attaché cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, and credit card cases, umbrellas.<br>IC 25: clothing and underwear, namely, shirts, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, belts, shoes, boots, and sandals. |

13

| | | | |
|---|---|---|---|
|  | 2,181,753 | August 18, 1998 | IC 14: jewelry, namely, rings, ear rings, bracelets, charms, necklaces, horological instruments, straps for watches, watches, and wrist-watches, and cases for watches.<br>IC 18: goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather; trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attaché cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, credit card cases, and umbrellas.<br>IC 25: clothing and underwear, namely, shirts, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, belts, shoes, boots, and sandals. |
|  | 2,361,695 | June 27, 2000 | IC 25: Clothing, namely, sweaters, shirts, sweatshirts, polo shirts, t-shirts, suits, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, pocket handkerchief squares for wear, gloves, ties, belts, bathing suits, shoes, boots and sandals, and hats. |
| <br>LOUIS VUITTON PARIS | 2,378,388 | August 22, 2000 | IC 18: goods made of leather or imitations of leather not included in other classes, namely, boxes of leather principally used for travel purposes, trunks, valises, traveling bags, * traveling sets for containing cosmetics and jewelry, * handbags, beach bags, shopping bags, shoulder bags, brief cases, pouches, fine leather goods namely, pocket wallets, purses, key cases, business card cases, credit card cases. |

| | | | |
|---|---|---|---|
|  | 2,773,107 | October 14, 2003 | IC 14: jewelry including rings, earrings, cuff links, bracelets, charms, necklaces, and medallions; horological and chronometric instruments and apparatus, namely, watches,<br>IC 18: travel bags, travel bags made of leather; luggage trunks and valises, garment bags for travel, vanity-cases sold empty; rucksacks, shoulder bags, handbags; attaché cases, briefcases, drawstring pouches, pocket wallets, purses, umbrellas, business card cases made of leather or of imitation leather, credit card cases made of leather or of imitation leather; key holders made of leather or of imitation leather.<br>IC 25: clothing, namely, shirts, T-shirts, belts, scarves, neck ties, shawls, skirts, raincoats, overcoats, trousers, jeans, pullovers, frocks, highheeled shoes, low-heeled shoes, boots, tennis shoes; hats |
|  | 3,107,072 | June 20, 2006 | IC 09: spectacles, sunglasses and spectacle cases.<br>IC 14: jewelry, namely, rings, earrings and ear clips, cuff links, bracelets, charms, necklaces, tie pins, medallions; horological and chronometric apparatus and instruments, namely, watches, watch cases, alarm clocks; jewelry boxes of precious metal, their alloys or coated therewith.<br>IC 18: leather and imitation leather products, namely, traveling bags, traveling sets comprised of bags or luggage, trunks and suitcases, garment bags for travel purposes; vanity cases sold empty, rucksacks, shoulder bags, handbags, attaché cases, document wallets and briefcases made of leather, pouches made of leather, wallets, purses, key cases, business card cases, credit card cases; umbrellas.<br>IC 25: clothing and undergarments, namely, shirts, tee-shirts, belts, scarves, neckties, shawls, skirts, raincoats, overcoats, trousers, denim trousers, dresses, jackets, sashes for wear, bathing suits, shoes, boots. |

| | | | |
|---|---|---|---|
| ✧ Ⅴ ✧ ⚹ ✧ ⚹ ✧ ⚹ ✧ ⚹ | 4,192,541 | August 21, 2012 | IC 03: soaps for personal use; perfumery; essential oils; cosmetics; creams for the hair, face, and body; lotions for the hair, face, and body; shower and bath gels; shower and bath preparations; shampoos; make-up preparations, namely, foundations, lipsticks, eye shadows, mascara, make-up powder, and nail polish.<br>IC 09: sunglasses; spectacles; optical lenses; spectacle cases; telephones; mobile telephones; smart phones; PC tablets; personal digital assistants; MP3 players; accessories for telephones, mobile telephones, smart phones, PC tablets, personal digital assistants, and MP3 players, namely, hands-free kits for telephones, batteries, covers, housings, façades, chargers, hand straps, and neck straps.<br>IC 14: jewelry; key rings of precious metal; tie pins; medallions; jewelry boxes; watches; watch bands; alarm clocks; cases for timepieces.<br>IC 16: printed matter, namely, pamphlets, catalogs, and books in the field of travel, luggage, luxury goods, fashion, clothing, sports, the arts; publications, namely, brochures and booklets in the field of travel, luggage, luxury goods, fashion, clothing, sports, the arts; stationery; stationery articles, namely, note pads, writing books, drawing books, calendars, agendas, notebooks, envelopes, letter paper, and index cards; covers for diaries, indexes, and pads; office requisites, namely, letter trays, paper cutters, pencils, inkstands, inkwells, paperweights, pencil holders, pen holders, writing pads, pens, balls, and nibs for pens; postcards; paper labels; newspapers; printed documents, namely, printed certificates.<br>IC 18: boxes of leather or imitation leather for packaging and carrying goods; traveling bags; leather traveling sets of luggage; trunks; suitcases; garment bags for travel; vanity cases sold empty; toiletry bags sold empty; backpacks; handbags; attaché cases; leather document cases; wallets; purses; leather key cases; umbrellas.<br>IC 24: textiles and textile goods, namely, bath linen, bed linen, table linen, towels, bed covers, textile table cloths.<br>IC 25: clothing, namely, underwear, shirts, tee-shirts, pullovers, skirts, dresses, trousers, coats, jackets, belts for clothing, scarves, sashes for wear, gloves, neckties, socks, bathing suits; footwear; headwear.<br>IC 34: cigar and cigarette cases of leather and imitation leather. |

| LOUIS VUITTON | 4,530,921 | May 13, 2014 | IC 09: optical apparatus, namely, binoculars; blank USB sticks; spectacles; sunglasses; spectacle frames; spectacle glasses; spectacle cases; accessories for telephones, mobile phones, smart phones, tablet devices, PDAs, and MP3 players, namely, covers, neck straps, neck cords, and bags and cases specially adapted for holding or carrying portable telephones and telephone equipment and accessories.<br><br>IC 16: paper bags; boxes of cardboard or paper; cardboard and paperboard envelopes and pouches for packaging; plastic materials for packaging, namely, bags; posters; pamphlets referring to travel; postcards; catalogs featuring luggage, travel accessories, bags, small leather goods, and clothing; paper labels; trading cards; greeting cards; business cards; invitation cards; printed publications, namely, books, newspapers, leaflets, and magazines featuring luggage, travel accessories, purses, small leather goods, and clothing; bookbinding materials; printed photographs; photograph albums; stationery, namely, note pads, desk pads, writing pads, drawing pads, envelopes, note paper; calendars; pocket calendars; note books; telephone indexes; diary covers; diaries; office requisites, namely, letter trays, paper knives, ink stands, inkwells, paper weights, pencil holders, pen holders, pencil tubs, blotting pads, pencils, fountain pens, rubber erasers, pen cases; printing types; printing blocks; table linens of paper.<br><br>IC 25: clothing, namely, pullovers, vests, shirts, tee-shirts, trousers, jackets, suits, coats, rain coats, waterproof jackets, waterproof pants, overcoats, parkas, skirts, dresses, pajamas, dressing gowns, nightgowns, robe, gloves, neck ties, belts for clothing, leather belts, scarves, pocket squares, sashes for wear, shawls, stockings, socks, tights, braces for clothing, suspenders, stoles, underwear, lingerie, bathing suits; headwear; shoes; slippers; boots; half-boots.<br><br>IC 26: buttons; hooks and eyes; shoe buckles; hair accessories, namely, hair pins, barrettes, hair bows, hair clips, hair bands, hair wraps; hair ornaments; brooches for clothing; clothing fasteners, namely, scarf holders. |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **$\mathcal{LV}$** | 4,614,736 | September 30, 2014 | IC 09: Optical apparatus, namely, binoculars; blank USB sticks; spectacles; sunglasses; spectacle frames; spectacle glasses; spectacle cases; accessories for telephones, mobile phones, smart phones, tablet devices, PDAs, and MP3 players, namely, covers, neck straps, neck cords, and bags and cases specially adapted for holding or carrying portable telephones and telephone equipment and accessories.<br>IC 16: Paper bags, boxes of cardboard or paper, cardboard and paperboard envelopes and pouches for packaging; plastic materials for packaging, namely, bags; posters; pamphlets referring to travel; postcards; catalogs featuring luggage, travel accessories, bags, small leather goods, and clothing; paper labels; trading cards; greeting cards; business cards; invitation cards; printed publications, namely, books, newspapers, leaflets, and magazines featuring luggage, travel accessories, purses, small leather goods, and clothing; bookbinding materials; printed photographs; photograph albums; stationery, namely, note pads, desk pads, writing pads, drawing pads, envelopes, note paper; calendars; pocket calendars; note books; telephone indexes; diary covers; diaries; office requisites, namely, letter trays, paper knives, ink stands, inkwells, paper weights, pencil holders, pen holders, pencil tubs, blotting pads, pencils, fountain pens, rubber erasers, pen cases; printing types; printing blocks; table linens of paper.<br>IC 26: Buttons; hooks and eyes; shoe buckles; hair accessories, namely, hair pins, barrettes, hair bows, hair clips, hair bands, hair wraps; hair ornaments; brooches for clothing; clothing fasteners, namely, scarf holders. |

The Louis Vuitton Marks are used in conjunction with the manufacture and distribution of high quality goods in the categories identified above.  True and correct copies of the Certificates of Registration for the Louis Vuitton Marks are attached hereto as Composite Exhibit "2."

29.     Long before the Defendants began their infringing activities complained of herein, the Louis Vuitton Marks have been used by Louis Vuitton in interstate commerce to identify and distinguish Louis Vuitton's high quality goods for an extended period of time.

30.     The Louis Vuitton Marks have never been assigned or licensed to any of the Defendants in this matter.

31.     The Louis Vuitton Marks are symbols of Louis Vuitton's quality, reputation and goodwill. Louis Vuitton has continuously used the Louis Vuitton Marks since registration.

32.     Further, Louis Vuitton expends substantial resources developing, advertising and otherwise promoting the Louis Vuitton Marks.

33.     Louis Vuitton extensively uses, advertises, and promotes the Louis Vuitton Marks in the United States in association with the sale of high quality goods and has carefully monitored and policed the use of the Louis Vuitton Marks.

34.     As a result of Louis Vuitton's efforts, members of the consuming public readily identify merchandise bearing or sold under the Louis Vuitton Marks as being high quality goods sponsored and approved by Louis Vuitton.

35.     Accordingly, the Louis Vuitton Marks have achieved secondary meaning as identifiers of high quality goods.

36.     Genuine goods bearing the Louis Vuitton Marks are widely legitimately advertised, promoted, and sold by Louis Vuitton and its authorized distributors via the Internet. Over the course of the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo! and Bing has become increasingly important to Louis Vuitton's overall marketing and consumer education efforts. Thus, Louis Vuitton expends significant monetary resources on Internet marketing and consumer education, including SEO strategies.  Those strategies allow Louis Vuitton and its authorized retailers to fairly and legitimately educate consumers about the value associated with the Louis Vuitton brand and the goods sold thereunder.

**Defendants' Infringing Activities**

37.     Defendants are promoting and advertising, distributing, selling and/or offering for sale goods in interstate commerce using counterfeits and confusingly similar imitations of the Berluti and/or Louis Vuitton Marks (the "Counterfeit Goods") through the commercial Internet websites operating under the Subject Domain Names.  True and correct copies of the web pages reflecting samples of the Internet websites operating under the Subject Domain Names displaying Plaintiffs' branded items offered for sale are attached hereto as Composite Exhibit "3."  Specifically, Defendants are using one or more of the Berluti Marks and/or the Louis Vuitton Marks (collectively, "Plaintiffs' Marks") to initially attract online consumers and drive them to Defendants' ecommerce stores operating under the Subject Domain Names.  Defendants are using identical copies of one or more of Plaintiffs' Marks for different quality goods. Plaintiffs have used Plaintiffs' Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiffs' merchandise.

38.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiffs' genuine goods.  Defendants are actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high quality products offered for sale by Plaintiffs despite Defendants' knowledge that they are without authority to use Plaintiffs' Marks.  The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in Defendants' ecommerce stores are genuine goods originating from, associated with, and/or approved by Plaintiffs.

39.     Defendants advertise their ecommerce stores, including their products offered for sale, to the consuming public via at least their websites operating under the Subject Domain Names.  In so advertising their stores and products, Defendants improperly and unlawfully use one or more of Plaintiffs' Marks without Plaintiffs' permission.

40.     As part of their overall infringement and counterfeiting scheme, most Defendants are, upon information and belief, concurrently employing and benefiting from substantially similar, and often times coordinated, advertising and SEO strategies based, in large measure, upon an illegal use of counterfeits and infringements of one or more of Plaintiffs' Marks. Specifically, Defendants are using counterfeits and infringements of Plaintiffs' famous names and Plaintiffs' Marks in order to make their websites selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiffs' and non-Plaintiffs' goods and information online.  By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiffs' genuine goods.  Defendants are causing, individual, concurrent and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' Marks, (iii) increasing Plaintiffs' overall cost to market their goods and educate consumers about their brand via the Internet, and/or (iv) maintaining an illegal marketplace enterprise which perpetuates the ability of Defendants and future entrants to that marketplace to confuse consumers and harm Plaintiffs with impunity.

41.     Defendants are concurrently conducting and directing their counterfeiting and infringing activities toward consumers and likely causing unified harm, within this district and

elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit.

42.     At all times relevant hereto, Defendants in this action had full knowledge of Plaintiffs' ownership of Plaintiffs' Marks, including their exclusive rights to use and license such intellectual property and the goodwill associated therewith.

43.     Defendants' use of Plaintiffs' Marks, including the promotion and advertisement, reproduction, distribution, sale, and/or offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

44.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' goodwill and reputation.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

45.     Defendants' above-identified infringing activities are likely to cause confusion, deception and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers into believing there is a connection or association between Plaintiffs' genuine goods and Defendants' Counterfeit Goods, which there is not.

46.     Further, Defendants 1-26 have registered their respective Subject Domain Name(s), using marks that are nearly identical and/or confusingly similar to at least one of Plaintiffs' Marks (the "Cybersquatted Subject Domain Names").

47.     Defendants 1-26 do not have, nor have they ever had, the right or authority to use Plaintiffs' Marks.  Further, Plaintiffs' Marks have never been assigned or licensed to be used on

any of the websites, including the websites operating under the Cybersquatted Subject Domain Names.

48.     Defendants 1-26 have provided false and/or misleading contact information when applying for the registration of the Cybersquatted Subject Domain Names, or have intentionally failed to maintain accurate contact information with respect to the registration of the Cybersquatted Subject Domain Names.

49.     Defendants 1-26 have never used any of the Cybersquatted Subject Domain Names in connection with a bona fide offering of goods or services.

50.     Defendants 1-26 have not made any bona fide non-commercial or fair use of Plaintiffs' Marks on a website accessible under any of the Cybersquatted Subject Domain Names.

51.     Upon information and belief, Defendants 1-26 have intentionally incorporated Plaintiffs' Marks in their Cybersquatted Subject Domain Names to divert consumers looking for Plaintiffs' Internet websites to their own Internet websites for commercial gain.

52.     Given the visibility of Defendants' various websites and the similarity of their actions, it is clear Defendants are either related or, at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Plaintiffs' and the overall consumer market in which they operate as a result of Defendants' concurrent actions.

53.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Plaintiffs.

54.     Plaintiffs have no adequate remedy at law.

55.     Plaintiffs are suffering irreparable injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of Plaintiffs' Marks.  If Defendants' counterfeiting and infringing, cybersquatting, and unfairly competitive activities, and their illegal marketplace enterprise, are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

56.     The harm and damage sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods and by the creation, maintenance and very existence of Defendants' illegal marketplace enterprise.

**COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT
PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)**

57.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 56 above.

58.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeits, copies, and/or colorable imitations of Plaintiffs' Marks in commerce in connection with the promotion, advertisement, distribution, sale and/or offering for sale of the Counterfeit Goods.

59.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and/or distributing products bearing one or more of Plaintiffs' Marks. Defendants are continuously infringing and inducing others to infringe Plaintiffs' Marks by using them to advertise, promote, sell and/or offer to sell goods bearing Plaintiffs' Marks.

60.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

61.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damage and irreparable harm to Plaintiffs and are unjustly enriching Defendants at Plaintiffs'' expense.

62.     Defendants' above-described illegal actions constitute counterfeiting and infringement of Plaintiffs' Marks in violation of Plaintiffs' rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

63.     Plaintiffs' have suffered and will continue to suffer irreparable injury due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

64.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 56 above.

65.     Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of one or more of Plaintiffs' Marks have been widely advertised and offered for sale throughout the United States.

66.     Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of one or more of Plaintiffs' Marks are virtually identical in appearance to Plaintiffs' genuine goods.  However, Defendants' Counterfeit Goods are different in quality.  Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

67.     Defendants, have used in connection with their advertisement, offer for sale, and sale of the Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress which tend to falsely describe

or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment

68.     Defendants have authorized infringing uses of one or more of Plaintiffs' Marks, in Defendants' advertisement and promotion of their counterfeit and infringing branded products. Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

69.     Additionally, many Defendants are using counterfeits and infringements of one or more of Plaintiffs' Marks in order to unfairly compete with Plaintiffs and others for space within organic search engine and social media results, thereby jointly depriving Plaintiffs of a valuable marketing and educational tool which would otherwise be available to Plaintiffs, and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web and across social media platforms.

70.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

71.     Plaintiffs have no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Plaintiffs will continue to suffer irreparable injury to its goodwill and business reputation as well as monetary damages.

## COUNT III - CLAIM FOR RELIEF FOR CYBERSQUATTING PURSUANT TO §43(d) OF THE LANHAM ACT (15 U.S.C. §1125(d))
### (Against Defendants 1-26 only)

72.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 56 above.

73.     At all times relevant hereto, Plaintiffs have been and still are the owners of the rights, title and interest in and to Plaintiffs' Marks

74.     Defendants 1-26 have acted with the bad faith intent to profit from Plaintiffs' Marks and the goodwill associated with Plaintiffs' Marks by registering and using the Cybersquatted Subject Domain Names.

75.     Plaintiffs' Marks were distinctive and famous at the time Defendants 1-26 registered the Cybersquatted Subject Domain Names.

76.     Defendants 1-26 have no intellectual property rights in or to Plaintiffs' Marks.

77.     The Cybersquatted Subject Domain Names are identical to, confusingly similar to, or dilutive of at least one of Plaintiffs' Marks.

78.     Defendants 1-26's conduct is done with knowledge and constitutes a willful violation of Plaintiffs' rights in Plaintiffs' Marks.  At a minimum, Defendants 1-26's conduct constitutes reckless disregard for and willful blindness to Plaintiffs' rights.

79.     Plaintiffs have no adequate remedy at law.

80.     Defendants 1-26's actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

81.     Plaintiffs have suffered and will continue to suffer irreparable injury and damages due to the above described activities of Defendants 1-26 if they are not enjoined.

## COUNT IV - COMMON LAW UNFAIR COMPETITION

82.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 56 above.

83.     This is an action against Defendants based on their (i) promotion, advertisement, distribution, sale and/or offering for sale of goods using or bearing marks which are virtually

identical to Plaintiffs' Marks, and (ii) creation and maintenance of an illegal, ongoing marketplace enterprise operating in parallel to the legitimate marketplace in which Plaintiffs' sells their genuine goods, in violation of Florida's common law of unfair competition.

84.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and/or distributing infringing and counterfeit versions of Plaintiffs' branded goods.  Defendants are also using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs for (i) space in search engine rand social media results across an array of search terms and/or (ii) visibility on the World Wide Web.

85.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the consuming public as to the origin and quality of Defendants' ecommerce stores as a whole and all products sold therein by their use of Plaintiffs' Marks.

86.     Plaintiffs' have no adequate remedy at law and are suffering irreparable injury and damages as a result of Defendants' actions.

<u>**COUNT V - COMMON LAW TRADEMARK INFRINGEMENT**</u>

87.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 56 above.

88.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing one or more of Plaintiffs' Marks.  Plaintiffs are the owners of all common law rights in and to Plaintiffs' Marks.

89.     Specifically, Defendants are promoting and otherwise advertising, distributing, offering for sale, and selling goods using and bearing infringements of one or more of Plaintiffs' Marks.

90.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing Plaintiffs' Marks.

91.     Plaintiffs have no adequate remedy at law and are suffering irreparable injury and damages as a result of Defendants' actions

**<u>PRAYER FOR RELIEF</u>**

92.     WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65, enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting Plaintiffs' Marks; from using Plaintiffs' Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, trademark or trade dress that may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of

Defendants are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiffs' Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of the Plaintiffs' names or Plaintiffs' Marks; and from otherwise unfairly competing with Plaintiffs.

b.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C §1651(a), The All Writs Act, enjoining Defendants and all third parties with actual notice of the injunction from participating in, including providing financial services, technical services or other support to, the Defendants in connection with the sale and distribution of non-genuine goods bearing counterfeits of Plaintiffs' Marks.

c.      Entry of an order that, upon Plaintiffs' request, those acting in concert or participation with Defendants who have notice of the injunction, as service providers cease hosting, facilitating access to, or providing any supporting service to any and all domain names, including but not limited to the Subject Domain Names, and websites through which Defendants engage in the promotion, offering for sale and/or sale of goods using counterfeits and/or infringements of Plaintiffs' Marks.

d.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, that upon Plaintiffs' request, the top level domain (TLD) Registry for each of the Subject Domain Names, and any other domains used by Defendants,  or their

administrators, including backend registry operators or administrators, place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files which link the Subject Domain Names, and any other domain names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of Plaintiffs' Marks, to the IP addresses where the associated websites are hosted.

      e.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, canceling for the life of the current registration or, at Plaintiffs' election, transferring the Subject Domain Names and any other domain names used by Defendants to engage in their counterfeiting of Plaintiffs' Marks at issue to Plaintiffs' control so they may no longer be used for illegal purposes.

      f.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, authorizing Plaintiffs to request any Internet search engines or service provider referring or linking users to any URL of the Subject Domain Names, which are provided with notice of the order, to permanently disable, de-index or delist all URLs of the Subject Domain Names and/or permanently disable the references or links to all URLs of the Subject Domain Names used by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of Plaintiffs' Marks, based upon Defendants' unlawful activities being conducted via the Subject Domain Names as a whole and via any specific URLs identified by Plaintiffs.

      g.      Entry of an order requiring each Defendant, its agent(s) or assign(s), to assign all rights, title, and interest, to its Subject Domain Name(s) to Plaintiffs and, if within five (5) days of entry of such order any Defendant fails to make such an assignment, the Court order

31

the act to be done by another person appointed by the Court at any non-complying Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

        h.      Entry of an order requiring each Defendant, its agent(s) or assign(s), to instruct all search engines to permanently delist or deindex the Subject Domain Name(s) and, if within five (5) days of entry of such order any Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at any non-complying Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

        i.      Entry of an order requiring each Defendant, its agent(s) or assign(s), to instruct the Registrar(s) for each Subject Domain Name(s) to permanently close the domain registration account(s) in which any Subject Domain Name(s) are located and, if within five (5) days of entry of such order any Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at any non-complying Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a)

        j.      Entry of an order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' trademark counterfeiting and infringing activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiffs' election with respect to Count I, that Plaintiffs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

        k.      Entry of an order requiring Defendants 1-26 to account to and pay Plaintiffs for all profits and damages resulting from those Defendants 1-26's cybersquatting

activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or, at

Plaintiffs' election with respect to Count III, that Plaintiffs be awarded statutory damages from

Defendants 1-26 in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted

domain name used as provided by 15 U.S.C. §1117(d) of the Lanham Act.

       l.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs'

costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

       m.      Entry of an award of pre-judgment interest on the judgment amount.

       n.      Entry of an order for any further relief as the Court may deem just and

proper.

DATED: April 6, 2020.         Respectfully submitted,

                    STEPHEN M. GAFFIGAN, P.A.

                    By: **Stephen M. Gaffigan/**_____
                    Stephen M. Gaffigan (Fla. Bar No. 025844)
                    Virgilio Gigante (Fla. Bar No. 082635)
                    T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
                    401 East Las Olas Blvd., Suite 130-453
                    Ft. Lauderdale, Florida 33301
                    Telephone: (954) 767-4819
                    E-mail: Stephen@smgpa.net
                    E-mail: Leo@smgpa.net
                    E-mail: Raquel@smgpa.net

                    Attorneys for Plaintiffs.

**SCHEDULE A**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Defendant Number | Defendant / Subject Domain Dame |
|---|---|
| 1 | berlutishoeoutlet.com |
| 2 | berluticopy.com |
| 3 | berlutishoesale.com |
| 4 | berlutishoeshop.com |
| 5 | berlutishoesshop.com |
| 6 | berlutishoestore.com |
| 7 | baglv.ru |
| 8 | bolsos-louisvuittons.com |
| 9 | louis-taschens.club |
| 10 | louisvuitton.top |
| 10 | louisvuitton2020.top |
| 10 | louisvuittonshop.club |
| 10 | louisvuittonshop.online |
| 10 | louis-vuitton-shop.top |
| 10 | louisvuittonshopsw.top |
| 10 | louisvuittonstore.xyz |
| 10 | louis-vuittonstore.xyz |
| 10 | luxuryshopin.com |
| 11 | louisvuitton-baratos.eu |
| 12 | louisvuittonhunter.net |
| 13 | lvbag.ru |
| 14 | lvbag2019online.com |
| 15 | lvbags.store |
| 16 | lvbagsale.club |
| 17 | lvbag-sale.com |
| 18 | lvbagsbe.com |
| 19 | lvbagtw.net |
| 20 | lv-shop.ru |
| 21 | lv-singapores.com |
| 22 | replicalvshop.com |
| 23 | replicaslvstore.com |
| 24 | toplvbag.com |
| 25 | authenticlouisvuittonhandbags.com |
| 25 | authenticlouisvuittonhandbagsoutlet.com |
| 25 | realpurses.ru |

| | |
|---|---|
| 26 | gifts4wife.com |
| 26 | amuze.top |
| 26 | bagbuy.top |
| 26 | bagf.xyz |
| 26 | baggn.top |
| 26 | baglr.top |
| 26 | bagq.xyz |
| 26 | bagr.xyz |
| 26 | bagt.xyz |
| 26 | bagw.xyz |
| 26 | bagxj.top |
| 26 | bourke.top |
| 26 | choies.top |
| 26 | costco.top |
| 26 | dermstore.top |
| 26 | dooney.top |
| 26 | drjays.xyz |
| 26 | ecost.xyz |
| 26 | freshpair.xyz |
| 26 | gift4wife.com |
| 26 | goldyn.top |
| 26 | goldyn.xyz |
| 26 | handango.xyz |
| 26 | joygryson.top |
| 26 | joygryson.xyz |
| 26 | karmaloop.top |
| 26 | kayu.xyz |
| 26 | loit.xyz |
| 26 | louisvuittonblackfriday.top |
| 26 | louisvuittonblackfriday2019.xyz |
| 26 | louisvuittonblackfridaydiscount.xyz |
| 26 | louisvuittonblackfridaysale.xyz |
| 26 | louisvuittonblackfridayshop.xyz |
| 26 | louisvuittonblackfridaystore.top |
| 26 | lv2020.top |
| 26 | lvbag.site |
| 26 | lvbags.xyz |
| 26 | lvblackfriday.top |
| 26 | lvblackfriday2019.club |
| 26 | lvblackfridayshop.top |

| 26 | lvblackfridaystore.xyz |
|---|---|
| 26 | lvclub.xyz |
| 26 | lvcoupon.xyz |
| 26 | lveshop.top |
| 26 | lvfactory.top |
| 26 | lvgifts.xyz |
| 26 | lvhandbags.xyz |
| 26 | lvhome.pub |
| 26 | lvhot.top |
| 26 | lvhouse.pub |
| 26 | lvmall.xyz |
| 26 | lvmarket.site |
| 26 | lvoff.top |
| 26 | lvonline.xyz |
| 26 | lvoutlet.site |
| 26 | lvshop.site |
| 26 | lvshop.xyz |
| 26 | lvstore.pub |
| 26 | modnique.xyz |
| 26 | nextag.top |
| 26 | shop0.site |
| 26 | shop0.xyz |
| 26 | shop1.pub |
| 26 | shop3.pub |
| 26 | shop4.club |
| 26 | shop4.ren |
| 26 | shop5.cloud |
| 26 | shop6.site |
| 26 | shop7.online |
| 26 | shop7.pub |
| 26 | shop8.pub |
| 26 | shop8.site |
| 26 | shop8.xyz |
| 26 | shop9.ren |
| 26 | shopb.pub |
| 26 | shopc.club |
| 26 | shopc.xyz |
| 26 | shopd.top |
| 26 | shopf.xyz |
| 26 | shopg.site |

| 26 | shopg.top |
|----|-----------|
| 26 | shoph.site |
| 26 | shoph.top |
| 26 | shopi.club |
| 26 | shopi.site |
| 26 | shopk.pub |
| 26 | shopk.top |
| 26 | shopm.club |
| 26 | shopm.xyz |
| 26 | shopn.pub |
| 26 | shopn.site |
| 26 | shopn.top |
| 26 | shopo.ren |
| 26 | shopr.club |
| 26 | shopt.club |
| 26 | shopt.pub |
| 26 | shopu.ren |
| 26 | shopu.xyz |
| 26 | shopv.pub |
| 26 | shopv.site |
| 26 | shopv.top |
| 26 | shopw.top |
| 26 | shopz.top |
| 26 | stila.top |
| 26 | stila.xyz |
| 26 | stjohn.xyz |
| 26 | store0.top |
| 26 | store0.xyz |
| 26 | store3.online |
| 26 | store3.xyz |
| 26 | store4.club |
| 26 | store4.top |
| 26 | store4.xyz |
| 26 | store5.club |
| 26 | store5.xyz |
| 26 | store7.club |
| 26 | store7.top |
| 26 | store7.xyz |
| 26 | store9.club |
| 26 | store9.top |

| 26 | store9.xyz |
|----|-----------|
| 26 | storea.xyz |
| 26 | storeb.site |
| 26 | storeb.xyz |
| 26 | storee.club |
| 26 | storee.pub |
| 26 | storef.xyz |
| 26 | storeg.xyz |
| 26 | storeh.xyz |
| 26 | storei.club |
| 26 | storei.site |
| 26 | storej.top |
| 26 | storej.xyz |
| 26 | storel.site |
| 26 | storel.xyz |
| 26 | storem.online |
| 26 | storen.club |
| 26 | storep.xyz |
| 26 | storeq.xyz |
| 26 | storer.cloud |
| 26 | stores.pub |
| 26 | storeu.club |
| 26 | storev.club |
| 26 | storev.online |
| 26 | storex.pub |
| 26 | storey.club |
| 26 | storey.pub |
| 26 | therow.xyz |
| 26 | vipbag.top |
| 27 | 3aimitationbags.com |
| 28 | 3sreplicabags.com |
| 28 | aaabagsfashion.com |
| 29 | aaabag.nu |
| 29 | aaahandbags.nu |
| 29 | leaderreplica.com |
| 29 | newsluxurybags.com |
| 30 | aaahandbag.se |
| 30 | aaareplicabags.nu |
| 31 | abags.su |
| 32 | abcwatches.cn |

| 32 | wowatches.cn |
|----|---|
| 33 | bag32.com |
| 34 | bagscopystore.com |
| 35 | bellissimo-luxury.com |
| 36 | bettypurses.com |
| 37 | brand-belts.ru |
| 38 | brandsandstyle.ru |
| 39 | brandshopping.com.ua |
| 40 | brendmsk.ru |
| 41 | brend-shoes.ru |
| 42 | brokenswingband.com |
| 43 | budgetsignsmn.com |
| 44 | cheap4world.ru |
| 45 | cheapbags.ru |
| 46 | cnreplica.best |
| 46 | hotsan.best |
| 46 | hotsan.site |
| 46 | replicabags.best |
| 46 | replicabags.shop |
| 47 | cheapbrandbagshoes.com |
| 48 | chinahandbags.ru |
| 49 | classicbilliardspool.com |
| 50 | clonwatches.com |
| 51 | dopestkickz.ru |
| 52 | dw-watchs.ru |
| 52 | houseswatchs.ru |
| 52 | housewatchess.ru |
| 52 | houswatchess.ru |
| 52 | watches-24-7.ru |
| 53 | eluxury.co |
| 54 | essenceluxury.ru |
| 55 | eurofashions.ru |
| 56 | fakepursesshopping.com |
| 57 | fashion-mania.ru |
| 58 | fashion-optic.com.ua |
| 59 | fronsa.com |
| 60 | fullsneaker.com |
| 61 | helpstaffs.com |
| 62 | hontwatches.to |
| 63 | imidge.com.ua |

| 64 | juliabags.ru |
|----|--------------|
| 65 | kolamkoi.com |
| 66 | krossovki-fashion.ru |
| 67 | lacosa-fashion.ru |
| 68 | lieblingstaschenshop.com |
| 69 | loftylittles.com |
| 70 | lux4shop.com |
| 71 | luxtime.su |
| 72 | luxury-bags-sale.ru |
| 73 | luxurybrandshop.ru |
| 73 | myluxurybags.ru |
| 74 | luxuryreplicasoutlet.com |
| 75 | luxuryreplicassale.com |
| 76 | luxurytasticreplica.co |
| 76 | luxurytasticreplicas.co |
| 77 | makwatch.com.ua |
| 78 | maragift.com |
| 79 | megareplicas.com.br |
| 80 | mensluxury.su |
| 81 | mk-fashion.ru |
| 82 | modamall.cn |
| 82 | modechine.ru |
| 83 | modeclothes.ru |
| 83 | pursemall.cn |
| 83 | pursemall.ru |
| 84 | modnie-sumki.com |
| 85 | plombier-montesson.com |
| 86 | pursesreplicashop.com |
| 87 | purseworthy.ee |
| 88 | raymenezes.com |
| 89 | replicabagshop.ru |
| 90 | replicabagslatest.com |
| 91 | replicabagsselling.com |
| 92 | replicanewbags.com |
| 93 | replicasderelogios.com.br |
| 94 | replicashopindia.in |
| 95 | replicasshopping.ru |
| 96 | replicawatches.ws |
| 97 | replicawatchreport.co |
| 98 | reptripleawatch.co |

| 99  | royalwatches.pk          |
|-----|--------------------------|
| 100 | saleaaa.com              |
| 101 | shoeshotshops.com        |
| 102 | shoes-vip.ru             |
| 103 | shopinc.ru               |
| 104 | shopping-handbags.com    |
| 105 | shopreplika.com.ua       |
| 106 | sneakers-fashion.ru      |
| 107 | styleper.kr              |
| 108 | sunglasses-online.ru     |
| 109 | swisscopies.ru           |
| 110 | taschenoutletwien.at     |
| 111 | theminiunicorn.co.za     |
| 112 | thepotentialists.ca      |
| 113 | titonistas.com           |
| 114 | tusani-big-ben.com       |
| 115 | vantagepointstable.com   |
| 116 | village-outlet.ru        |
| 117 | vipswatch.ru             |
| 118 | watchmania.ru            |
| 119 | watchmarkaz.pk           |
| 120 | whitestory.ua            |
| 121 | worldscapeslgpllc.com    |
| 122 | z077.ru                  |
| 123 | zahidgill.com            |
| 124 | zealreplica.pl           |
| 125 | zedo-fashion.com         |